NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ACE EUROPEAN GROUP and CERTAIN UNDERWRITERS AT LLOYDS OF LONDON SUBSCRIBING TO POLICY NUMBER AIH-17555,<br><br>                                    Plaintiffs,<br>v.<br><br>KATRINA SAPPE and JOHN DOES 1-10,<br><br>                                    Defendants<br>v.<br><br>JEROME DAVENPORT and COE INSURANCE AGENCY, INC.,<br><br>                              Third Party Defendants | Civil Action No.: 08-412 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

      This matter comes before the Court by way of a motion by Third Party Defendants[1] Coe Insurance Agency and Jerome Davenport (collectively "Third Party Defendants" or "Coe Agency") for reconsideration of the Court's May 31, 2012 Opinion and Order (CM/ECF Nos. 61-62) pursuant to Federal Rule of Civil Procedure 59(e) and Local Rule 7.1(i) governing such motions. No oral argument was heard. Fed. R. Civ. P. 78. For the reasons set forth in this Opinion, Third Party Defendants' motion is DENIED.

---

[1] Plaintiffs filed a brief in support of the instant motion. (CM/ECF No. 66).

1

## I. Background and Procedural History

The underlying facts and procedural history are not set forth in detail except as relevant to the instant motion, as the Court has already done so in the underlying Opinion and presently writes only for the parties. The instant action stems from an insurance dispute that arose when a fire destroyed Sappe's premises, which was insured by Plaintiffs Ace European Group and Certain Underwriters at Lloyds of London Subscribing to Policy Number AIH-1755 (collectively "Ace Euro") under a homeowners insurance policy ("Policy"). Ace Euro filed suit seeking a declaratory judgment as to the following: "(1) that Plaintiffs are under no duty to indemnify Sappe because she did not cooperate during the post-loss investigation, as required by the terms of the Policy; and (2) that the Policy is null and void because of Defendant's failure to disclose information in the Application." (Mem. Op., 6). Defendant Sappe asserted a counterclaim seeking a declaratory judgment that "Plaintiffs are obligated to indemnify her for losses sustained in the fire and related losses," as well as a third-party complaint against the Coe Agency, which asserted the following causes of action: (1) reformation; (2) breach of duty of good faith and fair dealing; (3) negligence; (4) breach of contract; and (5) violation of the New Jersey Consumer Fraud Act. Id. Both Ace Euro and Third Party Defendants Coe Agency filed motions for summary judgment. The underlying motions for summary judgment dealt with the following:

> Plaintiffs move for summary judgment, arguing that they are entitled to a declaratory judgment that they are under no duty to pay insurance proceeds to Defendant Sappe because of the following: 1) Defendant Sappe did not cooperate in the post-loss investigation; and 2) misrepresentations in the application for insurance render the policy null and void.
>
> Third Party Defendants focus their motion on the argument that denial of coverage is warranted because Sappe failed to cooperate during the post-loss investigation, with which they were not involved. They additionally argue that if the Court denies Plaintiffs' motion for summary judgment as to the failure to

2

> cooperate claim, summary judgment should be granted as to the reformation (Count I) and Consumer Fraud Act (Count V) claims in the Third Party Complaint.

(Mem. Op., 7).

In the underlying Opinion, the Court granted summary judgment in favor of Plaintiff Ace Euro, as it found that misrepresentations made in the application for insurance were material and, as a result, the Policy was void. Specifically, the application contained misrepresentations as to the existence of two different operations being conducted on the insured premises, a daycare and seamstress business. Importantly, Defendant Sappe maintained that Third Party Defendant Davenport was aware of the businesses and assisted Defendant in filling out the application for insurance. Although the parties disputed the extent and proper characterization for those businesses, the Court found that the babysitting activities materially affected the risk assumed by Plaintiffs in issuing the underlying policy. Accordingly, the Court found that rescission of the Policy was warranted and, as a result, did not reach the issue of whether or not Defendant Sappe failed to cooperate in the post-loss investigation.[2]

On June 12, 2012, Third Party Defendant Coe Agency moved for reconsideration on the issue of whether Defendant Sappe breached her obligation under the Policy to cooperate in the post-loss investigation by Plaintiff Ace. (CM/ECF No. 65). Plaintiffs filed a separate brief in support of the instant motion. (CM/ECF No. 66). On July 12, 2012, counsel for Ms. Sappe informed the Court via letter that she continues to rely on the papers previously filed on her behalf in opposition to the underlying motion for summary judgment in lieu of formally opposing the present motion. (CM/ECF No. 68). Although stating the obvious, it bears mention

---

[2] Although not the subject of the present motion, the Court notes for the sake of completeness that it did not reach the issue of whether the omission on the application regarding the seamstress/designer activity was sufficient to render the Policy void.

3

that the previous filing on which Ms. Sappe now relies does not address the arguments made by Third Party Defendants or Plaintiffs in the instant matter regarding reconsideration. The Court also notes that neither Third Party Defendants nor Plaintiffs filed a Reply.

## II. LEGAL STANDARD

"A party seeking reconsideration must satisfy a high burden, and must 'rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice.'" Leja v. Schmidt Mfg., Inc., 743 F. Supp. 2d 444, 456 (D.N.J., 2010) (quoting N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). Significantly, a motion for reconsideration is not a vehicle to re-litigate old matters or argue new matters that could have been raised before the court made its original decision. See e.g., P. Schoenfeld Asset Mgmt., L.L.C. v. Cendant Corp., 161 F. Supp. 2d 349, 352 (D.N.J. 2001); Tishcio v. Bontex, Inc., 16 F. Supp. 2d 511, 532 (D.N.J. 1998) ("A motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple."). Rather, "[s]ince the evidence relied upon in seeking reconsideration must be 'newly discovered,' a motion for reconsideration may not be premised on legal theories that could have been adjudicated or evidence which was available but not presented prior to the earlier ruling." Leja 743 F. Supp. 2d at 456. Thus, "[a] party seeking reconsideration must show more than a disagreement with the Court's decision and 'recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990) (quoting Carteret Savings Bank,

F.A. v. Shushan, 721 F.Supp. 705, 709 (D.N.J 1989), appeal dismissed, 919 F.2d 225 (3d Cir. 1990).

Reconsideration is an "extraordinary remedy," which should be "granted very sparingly" See L. Civ. R. 7.1(i) cmt. 6(d); see also Brackett v. Ashcroft, No. 03-3988, 2003 WL 22303078, at *2 (D.N.J., Oct. 7, 2003) ("[R]econsideration is an extraordinary remedy, that is granted 'very sparingly', and only when 'dispositive factual matters or controlling decisions of law were brought to the court's attention but not considered"). Motions made under Federal Rule of Civil Procedure 59(e) are governed by Local Rule 7.1, which requires that the moving party "set forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked." Further, "[t]he word 'overlooked' is the dominant term, meaning that except in cases where there is a need to correct a clear error or manifest injustice, 'only dispositive factual matters and controlling decisions of law which were presented to the court but not considered on the original motion may be the subject of a motion for reconsideration.'" Leja v. Schmidt Mfg., Inc., 743 F.Supp.2d 444, 456 (D.N.J., 2010) (citations omitted). Finally, "[t]he fact that an issue was not explicitly mentioned by the court does not on its own entail that the court overlooked the matter in its initial consideration." Morton v. Fauver, No. 97-5172, 2011 WL 2975532 *at 3 (D.N.J. 2011).

### III. DISCUSSION

As discussed above, a motion for reconsideration must be based on one of three grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice.'" Leja v. Schmidt Mfg., Inc., 743 F. Supp. 2d at 456. In the instant motion, Plaintiffs state that "it was

error not to find that the [Plaintiffs] properly disclaimed coverage for the Defendant's repeated refusal to cooperate." (Pls.' Mot., 8). Thus, Plaintiffs ask this Court to "declare that the [Plaintiffs] properly disclaimed coverage under the policy and have no obligation to pay for any loss the [D]efendant sustained." (Pls.' Mot., 8). The basis for Third Party Defendants' motion is the need to correct a clear error of law or prevent manifest injustice, "as it is Coe's position that the [C]ourt should have determined whether Sappe's post-loss conduct breached the policy conditions and justified ACE's original denial of coverage." (TPD Mot., 7). They continue: "The important point to recognize on this motion for reconsideration is that all of Sappe's conduct post-loss which breached the policy conditions regarding cooperation occurred prior to ACE filing its amended complaint alleging in a second count that the policy was null and void based on Sappe's material misrepresentations in her application for insurance." (TPD Mot., 7-8).

In addition, Plaintiffs write that "[i]t is submitted that the Decision and Order of this Court was [sic] correct and proper in grating summary judgment and voiding the policy. However, to resolve all issues and in the event that the [D]efendant pursues and appeal of the Decision and Order[,] summary judgment should also be granted to avoid piecemeal or inconsistent results. It is also submitted that this [C]ourt should have granted summary judgment on the alternate grounds." (Pls.' Mot., 1).

As an initial matter, "[a] decision suffers from 'clear error' only if the record cannot support the findings that led to that ruling." Leja, 743 F.Supp.2d at 456. Therefore, in order to obtain reconsideration, a party must demonstrate that: "(1) the holdings on which it bases its request were without support in the record, or (2) would result in 'manifest injustice' if not addressed." Id. (quoting United States v. Grape, 549 F.3d 581, 603-04 (3d Cir. 2008); N. River Ins., 52 F.3d at 1218). The movants do not clearly point to either. For example, Plaintiffs argue

that "[t]he resolution of all issues concerning the conduct of the defendant and the policy involved should be decided at one time. Thus, it is proper for this [C]ourt to consider and decide the propriety of the disclaimer of coverage on the assertion that the defendant failed to cooperate in the investigation of the loss." (Pls.' Br., 7). However, neither Plaintiffs nor Third Party Defendants point to any law in support of this argument, let alone demonstrate clear error.

Further, the Court did not reach the issue because it found rescission of the Policy warranted and, accordingly, there was no policy in effect under which to deny coverage. Thus, the issue was moot. The Court reiterates that a motion for reconsideration is not a vehicle through which a dissatisfied party may relitigate his case. See e.g. P. Schoenfeld Asset Mgmt., 161 F.Supp.2d. at 352. Third Party Defendants' motion recites the same arguments made in the underlying motion: (1) that Sappe's failure to cooperate with the post-investigation loss justified the denial of coverage by Ace Euro; and (2) that the Coe Agency was not involved in the investigation and adjustment of the loss and, as such, was not responsible for the denial of coverage. As previously explained, "[a] party seeking reconsideration must show more than a disagreement with the Court's decision and 'recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990) (quoting Carteret Savings Bank, F.A. v. Shushan, 721 F.Supp. 705, 709 (D.N.J 1989), appeal dismissed, 919 F.2d 225 (3d Cir. 1990). The instant motion is just that.

The dispositive issue in the underlying motion was whether the Policy was void due to material misrepresentations. While the Coe Agency was not responsible for the denial of coverage by Ace due to the post-loss investigation conduct, they may have been responsible, at

7

least in part, for the material misrepresentations in the application which provided the ground for rescission of the Policy as a whole as well as the basis of the Third Party Complaint.

In addition the Court, in its discretion, also declined to reach that issue because of the particular facts involved and the procedural posture of the case. "The fact that an issue was not explicitly mentioned by the court does not on its own entail that the court overlooked the matter in its initial consideration." Morton v. Fauver, No. 97-5172, 2011 WL 2975532 *at 3 (D.N.J. 2011). While the movants characterize the facts regarding the post-loss investigation as overwhelming evidence demonstrating that summary judgment is appropriate, such a determination is within the sole province of the district court. Despite those characterizations, it is a question of fact whether or not Defendant complied with the post-loss investigation requirements of the Policy and summary judgment is inappropriate in the instant case.

As set forth more completely in the Court's underlying Opinion granting summary judgment, under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party must first demonstrate that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The court construes facts and inferences in the light most favorable to the non-movant in order to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

"In considering the meaning of an insurance policy, we interpret the language 'according to is plain and ordinary meaning.'" Flomerfelt v. Cardiello, 202 N.J. 432, 441, 997 A.2d 991 (N.J. 2010) (quoting Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43, 161 A.2d 717 (App. Div. 1989)); Zacarias v. Allstate Ins. Co., 168 N.J. 590, 595, 775 A.2d 1262 (2001); Longobardi v.

8

Chubb Ins. Co., 121 N.J. 530, 537, 582 A.2d 1257 (1990). "Where the language at issue is clear and unambiguous, it will be enforced as written." Arthur Andersen LLP v. Federal Ins. Co., 416 N.J.Super. 334, 346, 3 A.3d 1279 (App. Div., 2010) (citing Flomerfelt v. Cardiello, 202 N.J. 432, 441, 997 A.2d 991 (N.J. 2010) ("An insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled")).

Where, however, a provision is genuinely ambiguous, a court will construe terms against the insurer and interpret the contract in accordance with the reasonable expectations of the insured. Flomerfelt v. Cardiello, 202 N.J. at 441. However, "[a]lthough courts should construe insurance policies in favor of the insured, 'they should not write for the insured a better policy of insurance than the one purchased.'" Longobardi v. Chubb Ins. Co., 121 N.J. at 537 (quoting Walker Rogge, Inc. v. Chelsea Title & Guar. Co., 116 N.J. 517, 529 (1998)); Flomerfelt v. Cardiello, 202 N.J. at 441.

The Policy here provides, in relevant part, as follows:

> Your Duties After Loss. In the case of a loss to covered property, you must see that the following are done: . . . e. Prepare an inventory of damage to personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts, and related documents that justify the figures in the inventory. f. As often as we reasonably require . . . (2) Provide us with records and documents we request and permit us to make copies; and (3) Submit to examination under oath, while not in the presence of any other "insured", and sign same . . . .

(Pls.' Mot. for Summ. J., Ex. 3). To the extent possible, the language should be interpreted in accordance with the reasonable expectations of the parties and interpreted according to its plain meaning.

The plain meaning of the phrase "[a]s often as we reasonably require" inherently involves a fact-based inquiry into what is reasonable under the particular circumstances involved. The

9

language requiring the Insured to submit to examination under oath is not ambiguous. However, it is a question of fact whether the requests by Plaintiffs were reasonable.

Also, the Policy clearly requires an Insured to provide records and documents and permit copies to be made as often as reasonably required. However, the language is ambiguous in that it is unclear whether providing documents means merely giving the insurance company the opportunity to make copies of the documents, or that insured must relinquish control and allow the insurance company to take possession of said documents. Therefore, the Court should construe the language in favor of the insured and in accordance with Ms. Sappe's reasonable expectations.

In the instant motion, Plaintiffs point to "Defendant [sic] refusal to completer [sic] her examination; to produce her financial and other records; and the failure to produce the family members for examinations under oath foreclosed any further investigation." (Pls.' Br., 10). However, Third Party Defendants and Plaintiffs' arguments regarding Defendant's alleged non-compliance are riddled with genuine issues of disputed material fact. For example, in the underlying motion, they argued that Defendant did not make certain documents available for copying. Defendant responded that she was prepared to allow Plaintiffs to copy the available documents, but did not want to surrender them as the facility chosen by Plaintiffs did not have a photocopier. Determining whether Ms. Sappe sufficiently complied with the Policy in that regard is an issue of genuinely disputed material fact, particularly in light of the ambiguity noted above. In addition, while the movants point to the fact that family members Calvin and Aston Sappe failed to appear for an examination under oath, they do not point the specific language in the Policy which requires family member interviews or point to any case law in which a Court granted summary judgment for failure to cooperate in a post-loss investigation on that basis.

Lastly, the parties do not dispute that Defendant appeared for two examinations under oath, but Plaintiffs and Third Party Defendants submit that the examination was never "completed." There is a genuine dispute as to whether further examination was reasonable particularly in light of the circumstances that had befallen Defendant after her home was destroyed in a fire. See e.g. Def.'s Opp'n. to Mots. for Summ. J., CM/ECF No. 56, 17. ("Having relocated to close quarters in a small apartment with Defendant's mother, it became more reasonable for family members to split up, and more difficult for them to interrupt their unwelcome fractured lives of juggling accommodations and trying to keep employed to submit to interrogation . . . ."). Accordingly, there are genuine issues of material fact which make summary judgment inappropriate at this juncture.

Finally, Third Party Defendants argue that the First Count of the Third Party Complaint seeking reformation of the Policy should be dismissed. (TPD Mot., 12). However, even a cursory reading of the Court's underlying Opinion reveals that the Court granted summary judgment in favor of Third Party Defendants on that issue. The final sentence in the paragraph under the subheading "Reformation" reads as follows: "Accordingly, the Court grants summary judgment in favor of Third Party Defendant as to Count I of Defendant's Third Party Complaint." (Mem. Op., 11).

## IV. CONCLUSION

As discussed above, the movants must meet a high burden, as reconsideration is an extraordinary remedy which should be granted sparingly. The arguments set forth by Plaintiffs and Third Party Defendants fall far short of demonstrating clear error. Rather, the instant motion and brief submitted in support thereof primarily consist of a recapitulation of the arguments

previously before the Court and express disagreement with the underlying Opinion. Therefore, based on the reasons detailed above, Third Party Defendants' motion for reconsideration is hereby DENIED.

An appropriate Order accompanies this Opinion.

DATED: August 21, 2012

Jose L. Linares,
United States District Judge